1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10   DIANE HILLIARD,

11            Plaintiff,              No. CIV S-07-1759 KJM

12        vs.

13
     MICHAEL J. ASTRUE,
14   Commissioner of Social Security,

15            Defendant.            <u>ORDER</u>
     _____/
16

17            Plaintiff seeks judicial review of a final decision of the Commissioner of Social

18   Security ("Commissioner") denying applications for Disability Income Benefits ("DIB") and

19   Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act

20   ("Act"), respectively.  For the reasons discussed below, the court will grant plaintiff's motion for

21   remand, deny the Commissioner's cross-motion for summary judgment, and remand this matter

22   under sentence four of 42 U.S.C. § 405(g).

23   /////

24   /////

25   /////

26   /////

                                           1

I. Factual and Procedural Background

In a decision dated January 12, 2007, the ALJ determined plaintiff was not disabled.[1] The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review. The ALJ found plaintiff has severe impairments of probable left carpal tunnel syndrome, moderate, recurrent, major depressive disorder and a generalized anxiety disorder, agoraphobia, but these impairments do not meet or medically equal a listed impairment; plaintiff can perform medium work with occasional handling with the left upper extremity and mentally perform simple routine tasks with limited public contact; plaintiff is not fully credible; plaintiff cannot perform her past relevant work; using the Medical-

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits. See 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

2

1  Vocational Rules, there are jobs that exist in significant numbers in the national economy that

2  plaintiff can perform; and plaintiff is not disabled.  Administrative Transcript ("AT") 18-25.

3  Plaintiff contends the ALJ committed error at step three of the sequential analysis, improperly

4  discredited plaintiff and her sister,[2] improperly discounted the opinion of a treating physician,

5  and should have obtained the testimony of a vocational expert.

6  II.  Standard of Review

7          The court reviews the Commissioner's decision to determine whether (1) it is

8  based on proper legal standards under 42 U.S.C. § 405(g), and (2) substantial evidence in the

9  record as a whole supports it.  Copeland v. Bowen, 861 F.2d 536, 538 (9th Cir. 1988) (citing

10  Desrosiers v. Secretary of Health and Human Services, 846 F.2d 573, 575-76 (9th Cir. 1988)).

11  Substantial evidence means more than a mere scintilla of evidence, but less than a

12  preponderance.  Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996) (citing Sorenson v.

13  Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975)).  "It means such relevant evidence as a

14  reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402

15  U.S. 389, 402, 91 S. Ct. 1420 (1971) (quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S.

16  197, 229, 59 S. Ct. 206 (1938)).  The record as a whole must be considered, Howard v. Heckler,

17  782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that

18  detracts from the ALJ's conclusion weighed.  See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir.

19  1985).  The court may not affirm the ALJ's decision simply by isolating a specific quantum of

20  supporting evidence.  Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If

21  substantial evidence supports the administrative findings, or if there is conflicting evidence

22

23          [2]  As discussed below, this matter will be remanded for further proceedings.  Because the
    ALJ on remand will issue a new decision, the credibility findings plaintiff challenges here are not
    binding on the subsequent decision.  On remand, however, if plaintiff's testimony is discredited,
24  the ALJ must set forth reasons for rejecting plaintiff's testimony that are clear and convincing.
    Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).  In addition,
25  any laywitness testimony that is discounted must be addressed with reasons that are germane to
    that witness.  See Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993).

26

supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, <u>see</u> <u>Sprague v. Bowen</u>, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence, <u>see</u> <u>Burkhart v. Bowen</u>, 856 F.2d 1335, 1338 (9th Cir. 1988).

III. <u>Analysis</u>

    A. Step Three Analysis

        Plaintiff contends the ALJ improperly analyzed whether plaintiff met or equaled Listing 12.04 or 12.06. The Social Security Regulations "Listing of Impairments" is comprised of impairments to certain specified categories of body systems that are severe enough to preclude a person from performing gainful activity. <u>Young v. Sullivan</u>, 911 F.2d 180, 183-84 (9th Cir. 1990); 20 C.F.R. § 404.1520(d). Conditions described in the listings are considered so severe that they are irrebuttably presumed disabling. 20 C.F.R. § 404.1520(d). In meeting or equaling a listing, all the requirements of that listing must be met. <u>Key v. Heckler</u>, 754 F.2d 1545, 1550 (9th Cir. 1985).

        To meet a listed impairment, a claimant must establish that she meets each characteristic of a listed impairment relevant to her claim. To equal a listed impairment, a claimant must establish symptoms, signs and laboratory findings "at least equal in severity and duration" to the characteristics of a relevant listed impairment, or, if a claimant's impairment is not listed, then to the listed impairment "most like" the claimant's impairment. 20 C.F.R. § 404.1526. A finding of equivalence must be based on medical evidence only. 20 C.F.R. § 404.1529(d)(3). A generalized assertion of functional problems is not enough to establish disability at step three. <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1100 (9th Cir. 1999).

        Mental disorders are considered in Part 12 of the Listings. Listing 12.04 addresses affective disorders; Listing 12.06 addresses anxiety related disorders. Each Listing is

comprised of two parts, labeled "A" and "B". Both parts of a listing must be met or equaled.[3] The Part A criteria determine whether evidence of a depressive disorder is present. 20 C.F.R. Part 404, Subpt. P, App. 12.04(A). The Part B criteria evaluate the functional loss resulting from a depressive disorder. See, e.g., Cruse v. U.S. Dept. of Health & Human Services, 49 F.3d 614, 616 (10th Cir. 1995). The ALJ found plaintiff did not meet or equal the "B"criteria. AT 23.

The Part B criteria are the same for Listings 12.04 and 12.06 and require at least two of the following functional limitations:

        1. marked restriction of activities of daily living;

        2. marked difficulties in maintaining social functioning;

        3. marked difficulties in maintaining concentration, persistence, or pace; or

        4. repeated episodes of decompensation, each of extended duration.

"Marked" means "more than moderate, but less than extreme." See Listing 12.00(C).

The ALJ found plaintiff did not meet or equal Listing 12.04 or 12.06 because there was no evidence of marked limitations in daily living, social functioning, or ability to concentrate sufficiently to complete unskilled work tasks. AT 23. In reaching this finding, the ALJ properly relied on the assessments of examining psychologist Dr. Azevedo and examining

---

[3] Alternatively, the requirements of Part C may be satisfied. Part C under Listing 12.04 requires a medically documented history of a chronic affective disorder of at least two years' duration and repeated episodes of decompensation, each of extended duration, or a residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate, or current history of one or more years' inability to function outside a highly supportive living arrangement. Part C under Listing 12.06 requires that the affective disorder result in a complete inability to function independently outside the area of one's home. Part C is inapplicable in the circumstances of this case in that there is nothing in the record that could support a positive finding of any of these subparts. AT 23, 200-201, 224-225, 249, 259-273, 286-288.

psychiatrist Dr. Behniwal.  AT 23, 200-201, 224-225.  The Part B finding is also supported by the

assessment of the nonexamining state agency physician, who assessed only mild to moderate

limitations in nonexertional functioning.  AT 23, 206-207, 248.

    Plaintiff's reliance on the GAF[4] of 45 as assessed by associate clinical social

worker Mr. Borel is misplaced.  The GAF does not correlate to the severity assessments utilized

in Social Security disability determinations.[5]  Moreover, Mr. Borel is not an acceptable medical

source[6] and the ALJ appropriately rejected Mr. Borel's opinion as unsupported by the clinical

notes.  AT 24, 193, 205, 259-273, 285-288.  The ALJ did not err in conducting the step three

analysis.

/////

---

[4] GAF is a scale reflecting the "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." Diagnostic and Statistical Manual of Mental Disorders at 34 (4th ed. 2000) ("DSM IV-TR").  A 41-50 rating indicates serious symptoms such as suicidal ideation, severe obsessional rituals, or serious impairment in social, work, or school functioning.  Id.

[5] 65 Fed. Reg. 50746, 50764-65 (Aug. 21, 2000) provides in pertinent part:

  Comment: Two commenters recommended that we discuss the Global Assessment of Functioning (GAF) Scale in the introductory paragraphs of final 12.00D.  They noted that we referred to the GAF scale in the preamble to the NPRM (56 FR at 33132) and seemed to encourage its use, but then failed to mention it in the proposed rules.
  Response: We did not adopt the comment.  We did not mention the GAF scale to endorse its use in the Social Security and SSI disability programs, but to indicate why the third sentence of the second paragraph of proposed 12.00D stated that an individual's medical source "normally can provide valuable additional functional information." To assess current treatment needs and provide a prognosis, medical sources routinely observe and make judgments about an individual's functional abilities and limitations.  The GAF scale, which is described in the DSM-III-R (and the DSM-IV), is the scale used in the multiaxial evaluation system endorsed by the American Psychiatric Association.  It does not have a direct correlation to the severity requirements in our mental disorders listings.

[6] Licensed psychologists are considered "acceptable medical sources," and social worker's reports are considered "other sources" of information.  20 C.F.R. §§ 404.1513(a),(e) & 416.913(a), (e).  Similar guidelines apply when weighing conflicting opinions from "acceptable medical sources."  See 20 C.F.R. §§ 404.1527, 416.927.  Accordingly, the opinions of physicians and licensed psychologists, both "acceptable medical sources," have the same status when assessing weight.  No specific guidelines exist for weighing opinions from "other sources."  Opinions from "other sources" are thus given less weight than opinions from "acceptable medical sources."

B.  Treating Physician's Opinion

Plaintiff also contends the ALJ improperly rejected the opinion of treating physician Dr. Long, D.O.,[7] who opined plaintiff was unable to function in a work environment. AT 258.  The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals.  Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).  Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual.  Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions.  An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons.  Lester, 81 F.3d at 831.  In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons, that are supported by substantial evidence.  Id. at 830.  While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (e.g., supported by different independent clinical findings), the ALJ may resolve the conflict.  Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)).  In any event, the ALJ need not give weight to conclusory opinions supported by minimal clinical findings.  Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir.1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751.  The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional.  Lester, 81 F.3d at 831.

/////

---

[7]  D.O. stands for Doctor of Osteopathic Medicine.

The ALJ rejected the opinion of Dr. Long, that plaintiff could perform no work, in favor of the opinions of the examining mental health practitioners, Drs. Azevedo and Dr. Behniwal. AT 24. While some parts of Dr. Long's opinion are not entirely inconsistent with the examining physicians, Dr. Long's conclusion that plaintiff could perform no work activities is inconsistent. It was within the province of the ALJ to resolve that conflict, where the opinions of the examining physicians rested on their own clinical observations. AT 200-201, 224-225. The ALJ also properly rejected Dr. Long's restrictive assessment as inconsistent with the clinical records as well as plaintiff's daily activities. AT 24, 103-117, 196, 213-214, 221, 259-273, 285-288. The reasons given by the ALJ for rejecting Dr. Long's opinion were specific and legitimate.

C. Expert Testimony

Plaintiff further asserts the ALJ committed error by failing to obtain vocational expert testimony. In finding plaintiff was not disabled, the ALJ relied on Medical-Vocational Rule 203.26. The Medical-Vocational Guidelines ("the grids") are in table form. The tables present various combinations of factors the ALJ must consider in determining whether other work is available. See generally Desrosiers, 846 F.2d at 577-78 (Pregerson, J., concurring). The factors include residual functional capacity, age, education, and work experience. For each combination, the grids direct a finding of either "disabled" or "not disabled."

There are limits on using the grids, an administrative tool to resolve individual claims that fall into standardized patterns: "[T]he ALJ may apply [the grids] in lieu of taking the testimony of a vocational expert only when the grids accurately and completely describe the claimant's abilities and limitations." Jones v. Heckler, 760 F.2d 993, 998 (9th Cir. 1985); see also Heckler v. Campbell, 461 U.S. 458, 462 n.5 (1983). The ALJ may rely on the grids, however, even when a claimant has combined exertional and nonexertional limitations, if nonexertional limitations are not so significant as to impact the claimant's exertional

capabilities.[8] Bates v. Sullivan, 894 F.2d 1059, 1063 (9th Cir. 1990), overruled on other grounds, Bunnell v. Sullivan, 947 F.2d 341 (9th Cir. 1991) (en banc); Polny v. Bowen, 864 F.2d 661, 663-64 (9th Cir. 1988); see also Odle v. Heckler, 707 F.2d 439 (9th Cir. 1983) (requiring significant limitation on exertional capabilities in order to depart from the grids).

The ALJ specifically found that plaintiff's additional limitations have little or no effect on the occupational base of unskilled medium work and noted that the bulk of unskilled work relates to working with things rather than with people or data. AT 25. While this observation is correct, see Social Security Ruling[9] 85-15, the ALJ's reliance on the unskilled occupational base is misplaced. In formulating plaintiff's residual functional capacity, the ALJ relied on the opinions of Drs. Azevedo, Behniwal and O'Brien. AT 23-24. Dr. Azevedo opined that it was not likely plaintiff would be able to interact appropriately with supervisors on a consistent basis. AT 201. Dr. Behniwal opined plaintiff would have moderate difficulty in performing work activities on a consistent basis and in maintaining regular attendance. AT 225. Dr. O'Brien assessed plaintiff's residual functional capacity of handling and grasping with the left hand as limited to two hours. AT 219. Despite the ALJ's reliance on these doctors' opinions, the ALJ does not explain, or point to evidence showing, why these limitations do not

---

[8] Exertional capabilities are the "primary strength activities" of sitting, standing, walking, lifting, carrying, pushing, or pulling. 20 C.F.R. § 416.969a (b) (2003); SSR 83-10, Glossary; compare Cooper v. Sullivan, 880 F.2d 1152, 1155 n. 6 (9th Cir.1989).
Non-exertional activities include mental, sensory, postural, manipulative and environmental matters that do not directly affect the primary strength activities. 20 C.F.R. § 416.969a (c) (2003); SSR 83-10, Glossary; Cooper, 880 F.2d at 1155 & n. 7 (citing 20 C.F.R. pt. 404, subpt. P, app. 2, § 200.00(e)). "If a claimant has an impairment that limits his or her ability to work without directly affecting his or her strength, the claimant is said to have nonexertional (not strength-related) limitations that are not covered by the grids." Penny v. Sullivan, 2 F.3d 953, 958 (9th Cir. 1993) (citing 20 C.F.R., pt. 404, subpt. P, app. 2 § 200.00(d), (e)).

[9] Social Security Rulings "represent precedent final opinions and orders and statements of policy and interpretations that we have adopted." 20 C.F.R. § 402.35(b)(1). Social Security Rulings are "binding on all components of the Social Security Administration." Heckler v. Edwards, 465 U.S. 870, 873 n.3 (1984); cf. Silveira v. Apfel, 204 F.3d 1257, 1260 (9th Cir. 2000) ("This court defer[s] to Social Security Rulings ... unless they are plainly erroneous or inconsistent with the Act or regulations.").

significantly erode the occupational base or why they were not included in the residual functional capacity finding.  See, e.g., SSR 96-8p (work-related mental activities include ability to respond appropriately to supervisors); 20 C.F.R. § 416.967(c) (medium work involves frequent lifting or carrying of objects weighing up to 25 pounds).

The ALJ erroneously relied on the grids in finding plaintiff was not disabled. Because the testimony of a vocational expert is necessary to determine whether there are jobs available to plaintiff within her residual functional capacity, the matter will be remanded so that such vocational expert testimony may be obtained.

For the foregoing reasons, this matter will be remanded under sentence four of 42 U.S.C. § 405(g) for further development of the record and further findings addressing the deficiencies noted above.

Accordingly, IT IS HEREBY ORDERED that:

1.  Plaintiff's motion for remand is granted;

2.  The Commissioner's cross-motion for summary judgment is denied; and

3.  This matter is remanded for further proceedings consistent with this order.

DATED:  March 25, 2009.

_____
U.S. MAGISTRATE JUDGE

006
hilliard.ss